# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

RENE S. SCHEUERMAN                                           PLAINTIFF

V.                          CASE NO. 1:17-CV-00108 DPM-JTK

SOCIAL SECURITY ADMINISTRATION                        DEFENDANT

## RECOMMENDED DISPOSITION

**I. Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge D. P. Marshall, Jr. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II. Introduction:**

Plaintiff, Rene S. Scheuerman, applied for disability benefits and supplemental security income on May 11, 2015, alleging a disability onset date of September 26, 2014. (Tr. at 15). After conducting a hearing, the Administrative Law Judge ("ALJ") denied Scheuerman's application. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Scheuerman has requested judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## III. The Commissioner's Decision:

The ALJ found that Scheuerman had not engaged in substantial gainful activity since the alleged onset date of September 26, 2014. (Tr. at 17). The ALJ found, at Step Two of the sequential five-step analysis, that Scheuerman had the following severe impairments: fibromyalgia and depressive disorder. *Id.*

At Step Three, the ALJ determined that Scheuerman's impairments did not meet or equal a listed impairment. (Tr. at 18). Before proceeding to Step Four, the ALJ determined that Scheuerman had the residual functional capacity ("RFC") to perform light work. (Tr. at 19). She had the capacity to perform complex, detailed, or skilled tasks involving multiple variables and to exercise considerable independent judgment, and she required little or no supervision. *Id.*

Based upon the RFC, the ALJ next determined that Scheuerman could return to past relevant work. (Tr. at 23). The ALJ made an alternate finding at Step Five. He relied upon the testimony of a Vocational Expert ("VE") to find that, based on Scheuerman's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 24). Based on that determination, the ALJ held that Scheuerman was not disabled. *Id.*

## IV. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only

evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B.  Scheuerman's Arguments on Appeal

Scheuerman argues that substantial evidence does not support the ALJ's decision to deny benefits. She contends that the ALJ's RFC determination was improper, and that the ALJ's reliance upon evidence that Scheuerman could do multiple activities of daily living was misplaced. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Scheuerman focuses her argument on limitations arising from fibromyalgia. She places great stock in a medical source statement from Lance Lincoln, M.D., dated September 9, 2015, but there is evidence of only two office visits with Dr. Lincoln between 2013 and the date of that statement (Tr. at 310). And Dr. Lincoln's opinion, which stated that Scheuerman could stand and walk for less than two hours and sit for about four hours, was written on a check box form with little reference to medical records or objective testing. *Id.* A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Furthermore, Dr. Lincoln did not even indicate fibromyalgia as a diagnosed condition, instead citing depression and migraines. (Tr. at 310). When he writes that Scheuerman would need to shift positions at will and lie down at unpredictable intervals, it is unclear what condition he thinks would require such accommodations. The Eighth Circuit has held that "physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies." *Guilliams v. Barnhart*,

3

393 F.3d 798, 803 (8th Cir. 2005).

Scheuerman presented to Safwan Sakr, M.D. on June 19, 2013, with body aches and fatigue. (Tr. at 280). She had no peripheral joint swelling, and she had normal range of motion and muscle strength according to the musculoskeletal exam. (Tr. at 281). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Scheuerman did register 14 of 18 fibromyalgia trigger points but Dr. Sakr did not diagnose fibromyalgia. (Tr. at 281). After almost a two-year gap in treatment, Scheuerman saw Ronald Tilley, M.D., for pain management on August 3, 2015. (Tr. at 303). Dr. Tilley noted that Scheuerman was not taking anything for pain due to side effects. *Id*. He found a grossly stable cervical spine with normal curvature, but a greatly reduced cervical range of motion. (Tr. at 305). Scheureman had pain with flexion and extension and multiple trigger points. *Id*. The lumbar spine had similarly limited range of motion and pain upon palpation. *Id*. But Scheuerman had negative straight-leg raises and normal strength and tone in her extremities. *Id*.

Dr. Tilley referred Scheuerman for physical therapy, and she began therapy on August 5, 2015. (Tr. at 339). The physical therapist found some pain markers, and he noted positive straight-leg raises. *Id*. He said Scheuerman's rehab potential was good. *Id*. He told Scheuerman to work on therapeutic exercise with strengthening and stretching. (Tr. at 340). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). This course of treatment was successful, because at two subsequent visits in August 2015, Scheuerman said she was much better with less pain. (Tr. at 341-342). The physical therapist discharged Schuereman from care in September 2015 because she failed to make follow-up appointments. (Tr. at 343). A failure to follow a recommended course of treatment

4

weighs against a claimant's credibility. *Guilliams* 393 F.3d at 802. The Court presumes that the conservative course of exercise therapy addressed Scheuerman's pain, since she discontinued physical therapy and only had one more medical appointment as of the date of the ALJ's decision. That was in June 2016, for symptoms of depression and fatigue. (Tr. at 383). Scheuerman's record of treatment is sparse and she did not require more than medication and exercise therapy. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Still, she argues that the RFC for light work exceeded her functional abilities. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ properly considered conservative treatment, mild objective findings, and positive response to physical therapy in assigning a light RFC. He also considered the fact that Scheuerman indicated she could do many activities of daily living. She took care of her paraplegic husband, took care of pets, prepared meals, did household chores, and shopped for groceries. (Tr. at 206-209). The ALJ observed that she needed to take breaks when she did these things, but still, the ability to undertake such activities generally undermines her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

In establishing the RFC, the ALJ must consider the record as a whole, and this ALJ properly evaluated activities of daily living against the backdrop of weak medical evidence of disability. In

fact, he cited to the two state-agency medical opinions, which assigned a light RFC, in his opinion. It is proper for the ALJ to consider state agency physician's opinions with other medical evidence: they are "highly qualified" experts in the evaluation of disability claims. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007); SSR 96-6p and 20 C.F.R. § 404.1527(f). The ALJ properly evaluated all evidence in the record as a whole to make his finding.

V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly assigned an RFC for light work and properly evaluated Scheuerman's activities of daily living. The finding that Scheuerman was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 9th day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE